HARRIS, Judge,
dissenting.
Nat Weaver, Inc. (NWI) entered into a joint venture agreement with Davis Land Company,. Inc. (Davis). Pursuant to that agreement, NWI was to purchase certain property and Davis was to develop the property. It was further provided that once the development was completed, Davis would purchase the property from NWI at twice the amount of the NWI investment.
NWI then went to the Fencl Trust (Nat Weaver individually was the trustee) to “sell” a portion of NWI’s interest in the joint venture to the trust in order to obtain a portion of the purchase money needed to enable NWI to purchase the property.
Nat Weaver, as trustee and on behalf of the trust, agreed to invest $75,000 of the trust assets in order to participate in the benefits of the joint venture between NWI and Davis. It was understood that since NWI expected to double its investment, the trust could double its. In any event, the trust was to receive the same return on its investment that NWI received.
Nat Weaver, as trustee, acknowledged in the subscription agreement on behalf of the trust that he had consulted with all of the financial advisers and consultants and attorneys that he thought were necessary in order to assure himself that the investment in his own company was prudent. He then delivered a check for $75,000 to himself as president of NWI and, with the help of those proceeds, proceeded to purchase the property involved in the joint venture. Through these very tough negotiations with himself (there is no indication that the beneficiaries were aware of this self dealing), Weaver also, on behalf of the trust, acknowledged that the trust might indeed lose all of its investment if the joint venture failed. However, he was apparently unable to convince even himself, as trustee, to waive all interest in the property purchased with trust funds if the venture failed. In fact, he acknowledged in his deposition that he took the property in the corporate name, in part, to secure the interest of the investors.
Davis went into bankruptcy before the property could be developed, thus rendering the joint venture agreement impossible to perform. NWI decided to develop the property on its own but the beneficiaries of the trust objected. Even though it was a self-serving agreement between Weaver, as trustee, and Weaver, as president of NWI, still the trust had only agreed to invest in a venture in which an experienced developer *1190 not only agreed to develop the property but also to purchase the developed lots. NWI was attempting to change the nature of the investment without the investors’ consent.[1]
After discovering what Weaver had done and was doing, the beneficiaries of the trust filed this action alleging that Weaver had engaged in self dealing to the detriment of the trust and moved to have him removed as trustee. They also sought to have the property purchased with trust funds be declared an asset of the trust under either the principle of resulting or constructive trust. They also alleged that the only directors and officers of NWI were Weaver and his wife, that NWI’s business was conducted out of Weaver’s home, and that NWI was, in fact, the alter ego of Nat Weaver. They filed a lis pendens to protect the trust’s interest in the property from further alienation by Weaver until the court could determine whether the trust had an equitable interest in the property-
The court struck the lis pendens, finding that there was an insufficient nexus between the property and the beneficiaries’ claim. In my view, the only nexus required for the lis pendens in this ease is Weaver; he put the trust in this position by his self dealing as trustee by providing trust assets to himself, through NWI, to purchase the property he is now attempting to free from the lis pendens by claiming that the trust has no interest in the property. The beneficiaries contend that since trust money was advanced to purchase property to be held until development and then sold for the benefit of the participants (including the beneficiaries of the Fend trust) in the expected profits from NWI’s interest in the joint venture, there was in implied agreement that the property would be held for the benefit of the investors if, in fact, the property was not developed by the joint venture. When the joint venture failed, the beneficiaries claimed that, pursuant to the doctrines of constructive or resulting trust, the trust became an “owner” of the property purchased with trust money. The lis pendens was to protect the trust from future good-faith purchasers of the property from NWI.
I believe the nexus is sufficient to support the lis pendens. NWI’s reliance on this court’s opinion in Lennar Florida Holdings, Inc. v. First Family Bank, 660 So.2d 1122 (Fla. 5th DCA 1995), is misplaced. In Len-nar, we held that a lis pendens was inappropriate after the property had been acquired by a good-faith purchaser. We stated:
The issue before us is whether the proponent of the lis pendens, First Family Bank, has shown that there is sufficient nexus between its action and the property in question. (Citation omitted). Although First Family had a “participation” interest in the subject note and mortgage, the mortgage was foreclosed and the collateral property sold pursuant to the judgment. First Family did not intervene in the foreclosure action. Lennar acquired title to the property after the mortgage was discharged. First Family has not alleged that Lennar fraudulently obtained title to the ... property.
Here, the beneficiaries are trying to avoid the involvement of a good-faith purchaser and, unlike Lennar, the beneficiaries have alleged the equivalent of fraud — fiduciary self dealing — against the current owner of the property. The fact that there was not an arm’s length transaction in the present case distinguishes this case from Lennar.
A closer issue was presented to the court in DeMapie v. Equitable Development Corp., 302 So.2d 418 (Fla. 1st DCA 1974), in which the trust claimed a subrogation interest in a mortgage so that it could foreclose on the mortgagee. Even though the trust’s claim was not founded on a written instrument (it was founded on the equitable principle of subrogation), the court held that the discharge of the lis pendens would be an abuse of discretion until the issue of subrogation could be decided.
I believe the trial court in this case likewise abused its discretion in discharging the lis pendens before the court could determine *1191 the merits of the beneficiaries’ claim to an interest in the property based on the self dealing of the trustee under the theory of a resulting or constructive trust. The issue of a bond was not considered by the trial court because it struck the lis pendens.

. Even though it is possible (though not shown by the record) that other investors might be willing to waive the temis of the investment agreement, their waiver cannot be forced on these beneficiaries.